The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>ALEKSANDR PAVLOVSKIY,<br><br>Defendant | No.  CR19-211J-CC<br><br>DEFENSE SENTENCING MEMORANDUM |

Defendant, Alexander Pavlovskiy, is 46 years of age.  He is married and has five children.  Mr. Pavlovskiy was born in Ukraine and his childhood is marked by trauma, loss, and depravation.  Mr. Pavlovskiy immigrated to the United States in 2000 and two of his children were born in this country.  He comes before this Court for sentencing upon pleading guilty to one count of possessing child pornography and one count of trafficking in stolen property.

**Introduction.**

Mr. Pavlovskiy's sentence should be limited to probation and home monitoring.  The reasons for this departure from the sentencing guidelines are explained below.  Probation and monitoring would be a deviation from the recommendations of the Federal Probation Department, and the court will understand why the request is made as it reads on.  Herein the

DEFENDANT'S SENTENCING MEMORANDUM

Page **1** of **15**

VINDICATE
CRIMINAL LAW GROUP

1201 Pacific Avenue, Suite C7
Tacoma, WA 98402
Ph: 253-441-8137 / Fax: 253-512-1957

Defense also addresses the Government's memorandum that advocates a deviation above what is recommended based on what it alleges is Mr. Pavlovskiy's failure to take responsibility and his purported lack of appreciation for the seriousness of the crimes. Neither assertion by the Government is true.

Mr. Pavlovskiy has no prior criminal history and was a productive member of society who created jobs for others. He was evaluated and determined to present little risk of physical harm to anyone, and he is determined to be at low risk for re-offending. Given these circumstances, a sentence of probation with a period of home detention would be "sufficient, but not greater than necessary," to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2).

### Defendant's History and Character.

**Early Years.** Mr. Pavlovskiy's childhood is fraught with trauma and abuse, including sex abuse, that have served to form the person he is today. Thankfully, Mr. Pavlovskiy is on the road to recovery and is working on repairing the psychological damage that he suffered as a child. Mr. Pavlovskiy is the oldest of three children. His mother was a caring parent, but she died of cancer when Mr. Pavlovskiy was seven. Prior to her death, Mr. Pavlovskiy assumed the role of nurse for his mother by washing and dressing her wounds and measuring her medication. Her death changed his life permanently. Mr. Pavlovskiy's father was an abusive alcoholic who punched and kicked his son for no reason. After his mother died, Mr. Pavlovskiy suffered an increase in the physical assaults from his father, including a vicious kick to his back that caused him to urinate blood.

There was a short reprieve from the abuse when a maternal aunt took Mr. Pavlovskiy and his two sisters into her home with her own children. But the aunt could not afford them for long and relinquished them to the government where they were placed in orphanages and group homes. These state-run programs imposed a new wave of abuse on Mr. Pavlovskiy. Ukraine's state-funded institutions are notorious for their corruption and

DEFENDANT'S SENTENCING MEMORANDUM

Page **2** of **15**

VINDICATE
CRIMINAL LAW GROUP

1201 Pacific Avenue, Suite C7
Tacoma, WA 98402
Ph: 253-441-8137 / Fax: 253-512-1957

neglect of unfortunate children.  **Exhibit A** is a 2019 article that shines a disturbing light on practices and management of Ukraine group homes.[1]  Mr. Pavlovskiy was hit with a pole or ruler for minor misconduct.  The children never had enough food—Mr. Pavlovskiy did not use the bathroom for days because of insufficient food.

Compounding the lack of food and constant abuse, Mr. Pavlovskiy witnessed his friend's mother being hit by a train as she tried to get across the tracks to bring her son home.  This event played in Mr. Pavlovskiy's head and nightmares.  Not doing homework at the orphanage was a reason to get struck by a ruler or rod.  Prior to entering the orphanage, Mr. Pavlovskiy was sexually abused by a family member that he trusted.

**Marriage and Move to United States.**  In his late teens, Mr. Pavlovskiy had finished high school and had obtained an associate degree.  He started going to church where he met his wife, Nadezhda.  She was older and therefore he found her mature and easy to talk to.  They quickly got married and started their family.  His wife's parents had claimed asylum in the United States some years prior and settled in Kent, Washington.  In 2000, they sponsored Mr. Pavlovskiy's family.  When the Pavlovskiy's arrived in Kent, they lived with his wife's parents at first and started a series of difficult jobs.  Eventually they moved into their own house and their financial situation improved.  They connected with the church, the children were enrolled in school, and they assimilated quickly through determination and reliance on their faith.

In the United States, Mr. Pavlovskiy worked as a janitor, and he was very good at fixing cars and most electronics.  He repaired discarded tools and resold them at flea markets and he was amazed that he could make a profit.  In 2012, he opened a thrift store to sell items that he repaired.  His business expanded to include other used items for resale.  The business flourished, expanded, and employees were hired, but Mr. Pavlovskiy failed to use good judgment when buying and selling items—particularly items that he knew were

---

[1] https://112.international/article/tortures-neglect-exploitation-no-tiolets-horrors-of-ukrainian-boarding-schools-36656.html



likely stolen.  Suspect items were purchased by Mr. Pavlovskiy and sold anyway.  Also, Mr. Pavlovskiy embarked on the reprehensible act of possessing child pornography.

  **The Crimes**:  **Count Two**.  As his business grew, Mr. Pavlovskiy started having back pain and was diagnosed with low testosterone.  He tried to medicate with alcohol and prescription medication.  Quickly, he started abusing alcohol.  Alcohol abuse and his testosterone malady likely impaired his judgment because he became even more reckless in his business practices.

  Mr. Pavlovskiy takes full responsibility for his actions in trafficking stolen goods in interstate commerce.  Although he went through the motions of implementing guidelines to protect against receiving stolen property, he did this to convince himself that he was doing the right thing while knowing that what he did was the opposite of the right thing.  He either accepted stolen goods himself or turned a blind eye when his employees accepted what were clearly stolen goods.  He acknowledges and accepts that he was motivated by the money and did not wish to curtail the ill-gained riches that flowed because of his crimes. He pleaded guilty to Count Two because he knows that he was wrong and he wanted to limit his exposure for possessing child pornography which, he understands, cannot be explained away.  He does not always understand what this justice system requires of defendants by way of contrition, and he does confuse mitigating circumstances with excuses, but he does know that excuses are not what sentencing is about.  He is fully remorseful and takes full responsibility.

  **The Crimes**:  **Count One.**  Mr. Pavlovskiy is haunted by the sexual abuse he endured as a child which may have contributed to his inexcusable foray into peer-to-peer child pornography.  A few images spiraled into many thousands of images of children being raped and exploited.  Mr. Pavlovskiy knew what he was doing was wrong and he hardly covered his tracks, but he was shocked when his crime came to light.  At that time, Mr. Pavlovskiy had no concept of the harshness with which his actions would be viewed having himself been sexually exploited as a child.  Suffering sex abuse as a child had, to some

DEFENDANT'S SENTENCING MEMORANDUM

Page **4** of **15**

VINDICATE
CRIMINAL LAW GROUP

1201 Pacific Avenue, Suite C7
Tacoma, WA 98402
Ph: 253-441-8137 / Fax: 253-512-1957

degree, desensitized Mr. Pavlovskiy to the harm that is caused to children who are victims of the child porn trade. The Court can rest assured, however, that Mr. Pavlovskiy is no longer of that mindset and wishes every single day that he could go back and do things differently. He begs this court to know that he is sorry and not just because he was caught. Mr. Pavlovskiy now knows that he will need to be vigilant for the rest of his life and remain in therapy to make sure this does not happen again. He now understands that there are living and breathing victims of the child porn trade that will forever be scarred. He knows also that sometimes children do not survive an encounter with child porn and his actions have contributed to those statistics.

**Acts Related to Video Recordings**. Mr. Pavlovskiy was not charged with anything involving placing a video camera in bathrooms. The Government's highlighting of these allegations as if they are fact is misleading and unwarranted. Mr. Pavlovskiy acknowledges that he possessed child porn, but he would not directly harm a child. He loves his own children and is considered a nurturing and gentle man and father. He hardly understands why he placed a recording device in bathrooms, and he knows that this looks very bad, but he did not do this to fulfill a perverse appetite. He understands that his actions need to be addressed in therapy but should not form the basis for increased jail time. Mr. Pavlovskiy was found to not present a danger to his children after the Washington State Child Protective Services (CPS) investigated the matter. The CPS unfounded letter is at **Exhibit B**. Once Mr. Pavlovskiy was arrested, CPS inexplicably issued another letter involving the same facts but now the letter is "founded". Mr. Pavlovskiy challenged the finding and lodged a formal appeal. **Exhibit C.** To this day, CPS has not responded to Mr. Pavlovskiy's appeal.

Placing a video camera in certain places does not point to causing physical harm to others, but it was an invasion of privacy and could indicate prurient and unhealthy interests. Anything is possible, and Mr. Pavlovskiy's actions may indicate that he was headed for increased trouble, but no such trouble materialized, and the Government offers no expert

VINDICATE
CRIMINAL LAW GROUP

1201 Pacific Avenue, Suite C7
Tacoma, WA 98402
Ph: 253-441-8137 / Fax: 253-512-1957

opinion on what the cameras meant. Therefore, the Court should place the allegations in their proper context. Mr. Pavlovskiy is already denied contact with all his children, and a continuation of the current home detention situation makes the most sense. Mr. Pavlovskiy's family will be no less safe with Mr. Pavlovskiy behind bars. If allowed on probation, Mr. Pavlovskiy can continue to work on the concerns that are already raised and any new mandates that may issue at sentencing. Non-productive confinement is not the way forward; and confinement will derail the significant progress that Mr. Pavlovskiy has made to limit the possibility of repeating his pre-arrest conduct.

Mr. Pavlovskiy is, every day, coming closer to a place where he will have his past well-managed and he will pose no risk. Since he cannot turn back time, all he can do is learn from what happened and, each day, show that he is deserving of a chance to do better. The justice system forced Mr. Pavlovskiy to take stock of what he did, and he knows that there is nothing to be done now but to submit to this Court's judgment which he hopes will be one that allows him to continue his progress in treatment. Mr. Pavlovskiy offers no excuse for what he did, and he is deeply ashamed and sorry for the harm he cause.

**Pavlovskiy's Family Financial Hardship**. Mr. Pavlovskiy's marriage was in serious trouble when he got arrested. He had already moved into an apartment. He was not supporting his wife emotionally because he became occupied with his own questionable needs and deeds. Today, Ms. Pavlovskaya wishes her husband were back in the family home. She has faith that he is better and will continue to get better. She struggles each day but is grateful for the small amount that her husband contributes to the family. It will take some time for her to forgive her husband fully, but she is a woman of faith.

After the arrest, Ms. Pavlovskaya quickly ran out of resources and started working a job as an in-home health aid. Her older children also started working to help with expenses. In 2017, Ms. Pavlovskaya filed for bankruptcy so that she could keep their home. **(Exhibit D** bankruptcy paperwork.) Mr. Pavlovskiy's financial information is provided to the Court at **Exhibit E.**

DEFENDANT'S SENTENCING MEMORANDUM

Page **6** of **15**

VINDICATE
CRIMINAL LAW GROUP

1201 Pacific Avenue, Suite C7
Tacoma, WA 98402
Ph: 253-441-8137 / Fax: 253-512-1957

**Medical Condition of Defendant**.  Mr. Pavlovskiy has suffered a variety of medical conditions over the years, and he has been treated for Hypertension, Hyperlipidemia, and low testosterone (**Exhibit F. Valley Medical Center Summary at page 50**).  In addition, Mr. Pavlovskiy tests positive for exposure to tuberculosis which is managed since his last checkup.  He suffered a motor vehicle accident in 2004 which caused headaches, chest pain, shortness of breath, abdominal pain, and neck pain. Complications from the accident never went away and is partially why he tried to self-medicate with alcohol.

**Psychosexual Evaluation.**  Loreli Thompson, a Lacey, Washington licensed psychologist conducted a psychosexual evaluation and risk assessment of Mr. Pavlovskiy in September 2020.  Dr. Thompson's evaluation is at **Exhibit G** and her curriculum vitae is at **Exhibit H.**

Dr. Thompson maintains her practice in Thurston County but has evaluated defendants across this state.  She is in a solo practice and notably has a law enforcement background and an understanding of how former Soviet bloc countries struggles with the same sex exploitation issues that marred Mr. Pavlovskiy's childhood.  She is studied in the prevalence of child sexual abuse, and she found Mr. Pavlovskiy struggled with minimization and accountability but, below, she recommends how this can be addressed in a non-punitive environment.

Dr. Thompson spent several days with Mr. Pavlovskiy and gave him a battery of tests commonly employed in her industry.  She assessed Mr. Pavlovskiy for psychopathy and studied the results of tests commonly employed to identify sexually deviant character traits.  She concluded that Mr. Pavlovskiy "has a low risk of re-offense for serious crimes." **Exhibit G, page 5**; and his "…testing did not indicate any significant issues." **Exhibit G, page 6**.  Dr. Thompson concluded that Mr. Pavlovskiy will not benefit from a punitive or controlling environment and he will not do will with negative reinforcement that he will encounter in prison.  She concluded:

DEFENDANT'S SENTENCING MEMORANDUM

Page **7** of **15**

VINDICATE
CRIMINAL LAW GROUP

1201 Pacific Avenue, Suite C7
Tacoma, WA 98402
Ph: 253-441-8137 / Fax: 253-512-1957

> Mr. Pavlovskiy was assessed to determine his risk of re-offense for sexual crimes and to identify any treatment needs, based upon his charge of being in possession of significant amounts of child pornography depictions. He is a Low risk to reoffend based on what is known about this type of offender and recidivism. **Exhibit G. page 8.**

A sexual history polygraph was conducted as part of the evaluation by Ms. Beverly Reinhold. At **Exhibit G**, **page 4**, the polygraphy is summarized as follows:

> On August 20, 2021, Mr. Pavlovskiy was administered a sexual history polygraph by Ms. Beverly Reinhold, examiner. He was deemed, "Not attempting deception" in his answer of "No" to the following questions:
> - Have you had any sexual contact with a minor that you haven't told me about?
> - Are you withholding information about sexual contact with a minor?
> - Have you had any illegal sexual contact you haven't told me about?

**Custodial Suicide Attempt and Location Monitoring**. On August 21, 2019, while in custody, Mr. Pavlovskiy tried to take his own life by cutting deeply into his forearms with a razorblade. **Exhibit I,** Bureau of Prisons Medical Records**.** There is nothing to suggest he will not do the same if he is sent back to prison. Mr. Pavlovskiy's situation screams rehabilitation and therapy not incarceration. If he is taken back into custody, Mr. Pavlovskiy is at great risk of ending his own life, thereby devastating his entire family that has suffered greatly already.

Mr. Pavlovskiy was released on bond on July 22, 2020. The Location Monitoring Department recently recommended that Mr. Pavlovskiy's conditions be relaxed because of his exceptional compliance and cooperation with the conditions of release. Order Modifying Appearance Bond is at **Exhibit J**. The Defense begs this court to allow Mr.

DEFENDANT'S SENTENCING MEMORANDUM

Page **8** of **15**

VINDICATE
CRIMINAL LAW GROUP

1201 Pacific Avenue, Suite C7
Tacoma, WA 98402
Ph: 253-441-8137 / Fax: 253-512-1957

Pavlovskiy to continue to make progress by remaining with the Location Monitoring Program.  This program has seen Mr. Pavlovskiy work longer and harder than any other participant.  His responsibilities are increased because he serves to guide and mentor new members of the program.

People who know Mr. Pavlovskiy can vouch that he has always treated every person respectfully and appropriately.  He has many letters of support from House of Mercy, Defy Ventures, and those who monitor, counsel, and instruct Mr. Pavlovskiy on achieving a better understanding of how he came to be where he is and what must happen for him to rehabilitate. [2]  Letters are at **Exhibit K.**

**Calculated Guideline Range.**  In determining the type of sentence to impose, the sentencing judge should consider the nature and seriousness of the conduct, the statutory purposes of sentencing, and the pertinent offender characteristics. A sentence is within the guidelines if it complies with each applicable section of this chapter. The court should impose a sentence sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing. 18 U.S.C. § 3553(a).

The Government's recommendations do not reflect the facts and its recommendations rely heavily on allegations that were never charged and documents that are not relevant.  The Government's emphasis on allegations that were unfounded by Child Protective Services is a red herring designed to prejudice the Court against Mr. Pavlovskiy.  Further, the Government is far afield of the guidelines and does not provide adequate justification for is deviation.  Also, the Government's position that Mr. Pavlovskiy does not accept responsibility for his conduct is simply not true.  Mr. Pavlovskiy has accepted responsibility for his conduct associated with the child pornography charge (Count One), and the trafficking charge (Count Two).

As explained above, Mr. Pavlovskiy understands that his conduct related to child

---

[2] The letters are from: Jordan Montgomery, Aleksandr Kholodyuk, Anatoliy Arkhipchup, Bob Faulk, David Shirley x 2, Michael Lovrick x2, Igor Sorochuk, Julian Franco, Ludmila Yanishak, Nina Lukomskaya, and Timothy Hill.



pornography is reprehensible. The Government is saying that Mr. Pavlovskiy should be responsible for his inability to articulate what he truly means. English is Mr. Pavlovskiy's second language, and he does not understand how the US justice system requires strict and unwavering language of responsibility and remorse. Mr. Pavlovskiy may struggles with articulating his position, but his manner of speaking should not be held against him.

Mr. Pavlovskiy's history is traumatic, but he still conducts himself with respect and kindness to others. His perspective is different, but it is not a perspective that lacks the ability to acknowledge and own the wrongfulness of what he did. If his words tend to minimize or excuse, it is because he is desperate for the Court and the Government to understand the full picture and not see him as a bad person. He is counseled that his compulsion to explain is not helpful at sentencing, but he remains convinced that explanation should be a good thing. This aspect of Mr. Pavlovskiy's psyche was addressed in his psychosexual evaluation, where Dr. Thompson observed:

> … (Mr. Pavlovskiy) is repressing negative thoughts and trying to be optimistic. He tends to deny or not want to discuss personal problems. He tends to conform to those he perceives to be in power in order to avoid problems. When things are going well, he tends to be cooperative and agreeable. He may not be aware of how his behavior impacts others, which should be addressed in therapy. He will do best with a treatment provider who is not punitive or controlling and who acknowledges successes. He has a low risk of re-offense for serious crimes.

The Government either cannot or will not allow Mr. Pavlovskiy's history in treatment and evaluation to be taken for the indicators of success that they are. Mr. Pavlovskiy deserves to be punished but he also deserves a chance to show that he is the least likely to repeat criminal activity. He has had a front row seat to the destruction he caused his victims, his family, and himself. He had the American Dream and could have had extreme financial success if he had not trampled it. Mr. Pavlovskiy wishes the court to know that these are not idle promises to avoid punishment. Being branded a "sexual predator" means he must

DEFENDANT'S SENTENCING MEMORANDUM

Page **10** of 15

VINDICATE
CRIMINAL LAW GROUP

1201 Pacific Avenue, Suite C7
Tacoma, WA 98402
Ph: 253-441-8137 / Fax: 253-512-1957

always conduct himself in a way that he cannot forget what he did. The bottom line is that Mr. Pavlovskiy does accept responsibility and he will continue to do so. He needs monitoring and therapy so that his sentencing means something.

### Authority and Additional Argument.

Articulated in 18 U.S.C. § 3553(a), the court should impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing. The reasons articulated above, show that if Mr. Pavlovskiy has a problem, it is not with posing a danger to people on the street.

*18 U.S.C. § 3553(a)*

Beyond what may be permissible under the Guidelines, "the history and characteristics of the defendant," 18 U.S.C. § 3553(a), and the other factors set forth in 18 U.S.C. § 3553(a)(2) support a sentence of probation with a period of home detention. In United States v. Hunt, 459 F.3d 1180, 1182 (11th Cir. 2006), the court summarized the factors that must be considered:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established . . .;
> (5) any pertinent [Sentencing Commission] policy statement . . .;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

There has been a continuing debate among the courts as to how much weight should be given to one of the listed factors, the Sentencing Guidelines. 459 F.3d at 1183-1184. The



decision in U.S. v. Hunt, 459 F.3d 1180 (11th Cir. 2006), resolves some of the debate. In the decision, the court rejected "any across-the-board prescription regarding the appropriate deference to give the guidelines." 459 F.3d at 1184. Rather, a "district court may determine, on a case-by-case basis, the weight to give the Guidelines, so long as that determination is made with reference to the remaining section 3553(a) factors that the court must also consider in calculating the defendant's sentence." 459 F.3d at 1185. Thus, as recognized by Judge Tjoflat in United States v. Glover, 431 F.3d 744, 752-753 (11th Cir. 2005), in some cases the Guidelines may have little persuasive force in light of some of the other § 3553(a) factors:

> Although "judges must still consider the sentencing range contained in the Guidelines, . . . that range is now nothing more than a suggestion that may or may not be persuasive . . . when weighed against the numerous other considerations listed in [§3553(a) ]." *Id.* at 787 (Stevens, J., dissenting). Indeed, as one district judge has already observed,
>> the remedial majority in Booker direct[s] courts to consider all of the § 3553(a) factors, many of which the guidelines either reject or ignore. For example, under § 3553(a)(1) a sentencing court must consider the "history and characteristics of the defendant." But under the guidelines, courts are generally forbidden to consider the defendant's age, his education and vocational skills, his mental and emotional condition, his physical condition including drug or alcohol dependence, his employment record, his family ties and responsibilities, his socio-economic status, his civic and military contributions, and his lack of guidance as a youth. The guidelines' prohibition of considering these factors cannot be squared with the §3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant.
>
> United States v. Ranum, 353 F. Supp. 2d 984, 986 (E.D.Wis.2005) (citations omitted). Thus, mitigating circumstances and substantive policy arguments that were formerly irrelevant in all but the most unusual cases are now potentially relevant in every case.

VINDICATE
CRIMINAL LAW GROUP

1201 Pacific Avenue, Suite C7
Tacoma, WA 98402
Ph: 253-441-8137 / Fax: 253-512-1957

The factors of Mr. Pavlovskiy's horrific formative years and his health and finances are all part of the history and characteristics of this defendant that must be considered. These are, of course, to be balanced against the circumstances of the offense. Again, Mr. Pavlovskiy recognizes that the circumstances of his case work against him. There are literally thousands of images of child pornography, some that are especially offensive. He recognizes, as well, "the intrinsic harm done to children" in the production of child pornography and that the "subsequent circulation of the images perpetrates the injury to the depicted child." United States v. Williams, 444 F.3d 1286, 1291 (11th Cir. 2006). Nonetheless, the circumstances of Mr. Pavlovskiy's childhood trauma and the failure of his attempts to treat his low testosterone diagnosis call for careful practical consideration and should carry weight.

Courts have not excluded child pornography cases from the command of §3553 that sentences should not be longer than necessary to achieve the goals of sentencing.[11] In United States v. Gray, 453 F.3d 1323 (11th Cir. 2006) the defendant had been convicted of downloading child pornography, something he had done for five years. The defendant was sixty-four years old, "had a history of health problems," and "had never molested a child." 453 F.3d at 1324. The court approved a sentence of seventy-two months, "less than half the one hundred fifty-one months that [d]efined the bottom of the guidelines range." 453 F.3d at 1325. In United States v. Halsema, 180 Fed.Appx, 103,104-105 (11th Cir. May 9, 2006), the mitigating circumstances were seemingly far less compelling than those in Mr. Pavlovskiy's case, but were sufficient to justify a sentence of twenty-four months rather than the fifty-seven to seventy-one months recommended by the Guidelines. In United States v. Wachowiak, 412 F. Supp. 2d 958 (E.D. Wisc. February 3, 2006), a twenty-four year old music student convicted of child pornography charges received a seventy month sentence rather than the 121 to 151 months recommended by the Sentencing Guidelines based largely on his expression of remorse, an otherwise praiseworthy life, strength of character, and the broad support of family and friends.

The harder issues may be whether a sentence without incarceration serves the more

DEFENDANT'S SENTENCING MEMORANDUM

Page 13 of 15

VINDICATE
CRIMINAL LAW GROUP

1201 Pacific Avenue, Suite C7
Tacoma, WA 98402
Ph: 253-441-8137 / Fax: 253-512-1957

generalconcern of deterrence and fulfills the "need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." To consider an individual's contribution to creating jobs, and his law-abiding life cannot be said to undermine the need for deterrence, nor does it fail to reflect the seriousness of the offense. Similarly, to base a sentence on the practical considerations of Mr. Pavlovskiy's real-world works and contributions neither undermines the need for deterrence nor fails to reflect the seriousness of the offense. Indeed, sentencing someone such as Mr. Pavlovskiy to a long prison sentence may even undermine respect for thelaw.

## Conclusion and Prayer.

Thus, the circumstances presented in Mr. Pavlovskiy's case justify a departure from the Sentencing Guidelines. More importantly, now that the decision in United States v. Booker, 543 U.S. 220 (2005) has made the Guidelines advisory and the parsimony clause of 18 U.S.C. § 3553(a) the paramount consideration, the history of Mr. Pavlovskiy show that a period of supervision that includes home detention is "sufficient but not greater than necessary to comply with" the goals of sentencing. Mr. Pavlovskiy, therefore, requests this Court to impose just such a sentence.

Presented by:

_____/s/Gloria Backus_____                         _____January 27, 2022_____
Gloria Backus, WSBA 24279                                             Date
Vindicate Law Group
Attorneys for Defendant
1201 Pacific Avenue
Tacoma, WA  98402
Ph: 253-441-8137 / Fax: 253-512-1957

DEFENDANT'S SENTENCING MEMORANDUM

Page **14** of 15

VINDICATE
CRIMINAL LAW GROUP
1201 Pacific Avenue, Suite C7
Tacoma, WA 98402
Ph: 253-441-8137 / Fax: 253-512-1957

The following are attached as Exhibits to this Document.

| Exhibit | Description |
|---|---|
| A | 2019 article that shines a disturbing light on practices and management of Ukraine group homes |
| B | CPS Documents |
| C | CPS Appeal |
| D | Bankruptcy |
| E | Financials |
| F | **Valley Medical Center Summary** |
| G | Psychosexual Evaluation |
| H | Curriculum Vitae – Dr. Loreli Thompson |
| I | Medical Record – Bureau of Prisons |
| J | Order Modifying Appearance Bond |
| K | Letter/Statements Supporting Defendant |

DEFENDANT'S SENTENCING MEMORANDUM

Page **15** of **15**

VINDICATE
CRIMINAL LAW GROUP

1201 Pacific Avenue, Suite C7
Tacoma, WA 98402
Ph: 253-441-8137 / Fax: 253-512-1957